UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NEW MING INC.,
    Plaintiff,

v.                                                                 CIVIL ACTION NO. 22-11020-MPK

ZHONG ZHUANG,
    Defendant.

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS (#13).

KELLEY, U.S.M.J.

I.    Introduction.

This is a dispute involving a grocery store in Boston, Massachusetts called Ming's Supermarket (the "Supermarket").  New Ming Inc., a Massachusetts corporation that operated the Supermarket, sued Zhong Zhuang, a resident of Pennsylvania who managed the Supermarket through his corporate entity Lotus Foods Boston, LLC, asserting claims of fraud/intentional misrepresentation (Count I), intentional interference with advantageous business relations (Count II), and conversion (Count III).  (#1).

Zhuang moved to dismiss or, in the alternative, for this court to transfer the case to the United States District Court for the Western District of Pennsylvania.  (#13).  On November 17,

1

2022, the court heard argument and took the motion under advisement. For the reasons set out below, the court **DENIES** defendant's motion.[1]

II. <u>Background</u>.

**A. Factual Background.**

Except where otherwise noted, the court takes the following facts from the plaintiff's complaint and the documents attached to it. (#1). New Ming is a Massachusetts corporation with a principal place of business in Boston, Massachusetts. *Id.* ¶ 5. It operated the Supermarket and the ancillary parking lots at its location on Washington Street in Boston. *Id.* ¶ 7.

Between February and July 2021, Zhuang, a Pennsylvania resident, represented to New Ming that he could "raise $600,000 to loan to New Ming for its operation." *Id.* ¶¶ 6, 9. He also represented, allegedly during the same timeframe,[2] that he had "extensive and significant experience in managing, operating, and maintaining large supermarkets," (*id.* ¶ 11), and that he "possess[ed] college degrees in business management and computer science which, together with his background, track record, and connections, would enable him to successfully manage and operate the Supermarket," (*id.* ¶ 12). Around July 13, 2021, Zhuang formed Lotus Foods Boston, LLC, under the laws of Pennsylvania, through which he proposed to manage the Supermarket. *Id.* ¶¶ 10, 15.

Relying on Zhuang's statements, on August 3, 2021, New Ming entered into a commercial loan agreement and a management agreement (together, the "Agreements") with Lotus Foods, in which Lotus Foods agreed to (i) loan New Ming $600,000 for the operation of the Supermarket,

---

[1] On August 17, 2022, both parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). (#17).

[2] The complaint is at times unclear regarding dates, but plaintiff's counsel represented at the hearing that the paragraphs are in chronological order. (#23).

and (ii) manage the Supermarket on New Ming's behalf. *Id.* ¶¶ 16-17; *id.* at Ex. A (the commercial loan agreement) and Ex. B (the management agreement). Both agreements were to be governed by Pennsylvania law, (*id.* at Ex. A ¶ 18; Ex. B ¶ 7.5), and included the following forum selection clause:

> **Each party to this Agreement hereby agrees that the Court of Common Pleas of Allegheny County, Pennsylvania, or the United States District Court for the Western District of Pennsylvania, should it have jurisdiction,** have exclusive jurisdiction to hear and determine any claims or disputes between the parties pertaining directly or indirectly to this Agreement or to any matter arising here from. To the extent permitted by law, each party hereby expressly submits and consents in advance to such jurisdiction and any action or proceeding commenced by the other party, and agrees that service of such summons and complaint or other process or papers may be made by registered or certified mail addressed to each party at the address to which notices are to be sent pursuant to this Agreement. Each of the parties waives any claims that the aforementioned Courts are an inconvenient forum or an improper forum based on lack of venue. The choice of forum set forth in this section shall not be deemed to preclude the enforcement of any judgment obtained in such forum or the taking of any action to enforce the same in any other appropriate jurisdiction.

*Id.* at Ex. A ¶ 19(i); Ex. B ¶ 7.6(a) (substantially similar)). Zhuang was not a signatory to either agreement, but signed both on Lotus Foods' behalf as its manager. *Id.* at Ex. A, p. 10; Ex. B, p. 7.

Soon after signing the papers, the parties' relationship deteriorated. In September 2021, New Ming learned that Zhuang, without New Ming's permission, had started an online grocery shopping service under the name of "Lotus Food" using the Supermarket's physical address. (#1 ¶ 18). New Ming asked Zhuang to terminate the online grocery business and focus on managing the Supermarket's physical store, but Zhuang refused to do so. *Id.* ¶¶ 20-21. Over the next month or two, New Ming observed Zhuang's operation of the Supermarket and concluded that, contrary to his previous assertions, he had little or no experience managing a large supermarket. *Id.* ¶ 22. As a result, the Supermarket began to fail. *Id.* ¶ 23.

On top of this, and unknown to New Ming at the time, Zhuang stopped making payments to New Ming's vendors, suppliers, landlords, and other third parties beginning in November 2021. *Id.* ¶ 28.  Then, in December, Zhuang informed New Ming that he would not manage the Supermarket after the Chinese Lunar New Year, which that year fell on February 1, 2022. *Id.* ¶ 29. When New Ming took over the Supermarket's management, New Ming found that Zhuang had left without appropriately transitioning the business's operations, financial records, and business records.  *Id.* ¶ 30.  Zhuang also took with him New Ming's files and payment records related to the Supermarket's operation (all of which he has yet to return).  *Id.* ¶¶ 31-33, 51.  By then, New Ming's debts to third parties had reached $2,130,000.  *Id.* ¶ 35.  New Ming promptly paid out $1,030,000 to begin clearing the mess.  *Id.* ¶ 36.

After leaving the Supermarket (so, after February 1, 2022), Zhuang informed New Ming's bank, Rockland Bank, that New Ming had lost its checkbooks.  (#1 ¶ 37).  On March 16, Zhuang again contacted Rockland Bank and stopped New Ming's checks numbered 2,000-5,000. *Id.* ¶ 38. The next month, Zhuang called Rockland Bank once more, this time stopping all checks, including those newly ordered by New Ming. *Id.* ¶ 39.  As a result of Zhuang's stop orders, New Ming could make no further payments to its venders, suppliers, and other third parties; and those same third parties were unable to deposit any outstanding checks from New Ming. *Id.* ¶¶ 40-41.  Amid the chaos, Zhuang (falsely) represented to those same third parties that New Ming was in "financial distress" and unable to keep its contractual obligations. *Id.* ¶¶ 42-43, 66-67.

During this same time, around February 2022, Zhuang transferred, without New Ming's permission, approximately $100,000 from a Lotus Food bank account established for the benefit of New Ming to a different, unknown account.  (#1 ¶ 45).  In April, Zhuang took another $9,000 from New Ming's Rockland Bank Account, again without permission.  *Id.* ¶ 46.  Then, he took

4

New Ming's business records from its offices in Boston, once again without authorization. *Id.* ¶ 48. Despite repeated requests, Zhuang has not returned the records. *Id.* ¶¶ 50-51.

By May 2022, New Ming's business reputation had been "greatly damaged," and its contracts with vendors and suppliers had been terminated. (#1 ¶ 53). On June 9, 2022, New Ming stopped operating the Supermarket.[3] *Id.* ¶ 54.

**B. The Other Pending Lawsuits.**

  a. *The Pennsylvania Action*

On February 25, 2022, Lotus Foods issued a Notice of Default on the $600,000 loan to New Ming, and shortly thereafter filed a Complaint in Confession of Judgment in the Court of Common Pleas of Allegheny County, Pennsylvania. (#15-1 at Ex. 1). On April 4, New Ming filed a Petition to Strike or, in the Alternative, Petition to Open Confessed Judgment, contesting the judgment. *Id.* at Ex. 2. Then, on September 20, New Ming filed an Answer with New Matter and Counterclaims, asserting six counterclaims against Lotus Foods, including fraud (Count II), conversion (Count III), and tortious interference with current and prospective contractual relations (Count VI). (#24-1).[4] Trial is set for June 2023. (#24-2). Zhuang is not a party to this action.

---

[3] At the hearing, plaintiff's counsel indicated that, since filing this lawsuit in June 2022, the Supermarket has indeed opened once more under New Ming's management. (#15 at 2, n.1; #23). Either way, the court's decision does not rest on whether the Supermarket is open or closed.

[4] On November 17, approximately an hour before the remote hearing, defendant's counsel emailed two exhibits to the court and to opposing counsel. *See* #24-1 and #24-2, attached. Both exhibits reflect public records in the Pennsylvania Action, of which this court may take judicial notice. *Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) ("A court may consider matters of public record in resolving a Rule 12(b)(6) motion to dismiss.").

    b.  *The Massachusetts Action*

On March 24, 2022, Lotus Foods commenced an action in Suffolk County Superior Court to enforce the judgment in the Pennsylvania Action, captioned *Lotus Foods Boston LLC v. New Ming Inc.*, Case. No. 2284-cv-000643.  Zhuang is not a party to this action.

**C.**    **This Lawsuit.**

Before filing counterclaims in the Pennsylvania Action, on June 19, 2022, New Ming filed this lawsuit against Zhuang in his individual capacity asserting claims for three common law torts: fraud/intentional misrepresentation (Count I), intentional interference with advantageous business relations (Count II), and conversion (Count III).  (#1).  New Ming did not join Lotus Foods.  *Id.*

On August 18, Zhuang filed this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(7) for failure to state a claim and failure to join a necessary party pursuant to Fed. R. Civ. P. 19.  (#13).  Zhuang claimed, first, that New Ming failed to allege that Zhuang could be held liable for what he contends to have been the actions of Lotus Foods, and therefore failed to state a claim under Fed. R. Civ. P. 12(b)(6).  (#15 at 3-5).  Second, he claimed that Lotus Foods is a necessary and indispensable party under Fed. R. Civ. P. 19, but cannot be joined to this lawsuit due to the forum selection clauses in the Agreements, and so, the case must be dismissed under Fed. R. Civ. P. 12(b)(7).  (#15 at 6-9).   In the alternative, Zhuang asks the court to transfer the matter to the Western District of Pennsylvania in accordance with the forum selection clauses.  (#15 at 9-11). New Ming opposed, (#20), and the court heard argument on November 17, 2022.

III.     Analysis.

**A. Failure to State a Claim - Rule 12(b)(6)**

   *a. Standard of Review*

To decide a motion for failure to state a claim under Rule 12(b)(6), "'we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  The court "'may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'" *Id.* at 53 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).  To survive, the complaint must "'contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.''" *Ríos-Campbell v. U.S. Dep't of Commerce*, 927 F.3d 21, 24 (1st Cir. 2019) (quoting *Haley*, 657 F.3d at 46).  A claim achieves facial plausibility if the complaint's allegations, all together, "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see Garayalde-Rijos v. Mun. of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014) ("[N]o single allegation need [establish] . . . some necessary element [of the cause of action], provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible." (internal quotes and citations omitted)).

*b. Discussion*

Zhuang claims that any actions he allegedly took were within the scope of his role as manager of Lotus Foods, and that G.L. c. 156C, § 22[5] shields him from liability for such actions taken on Lotus Foods' behalf. (#15 at 4-5). He argues that he cannot be held individually liable for those actions because New Ming failed to adequately allege facts to pierce the corporate veil. *Id.* With no individual liability, and no Lotus Foods against which to assert corporate liability, Zhuang asserts that New Ming's whole case fails as a matter of law. *Id.*

Following some discovery, Zhuang's contentions may prove correct; but we are not there yet. At this stage we must take New Ming's allegations as true, and New Ming has alleged enough to pursue Zhuang individually. As a threshold matter, there is no dispute that New Ming alleges that Zhuang himself, not Lotus Foods, engaged in tortious activity. *See, e.g.,* #1 ¶ 11 ("**Zhuang** . . . represented to New Ming's officer's, shareholders, or authorized representatives that he had extensive and significant experience in managing, operating, and maintaining large supermarkets . . ."); ¶ 16 ("[R]elying on **Zhuang's** representation, New Ming entered into a commercial loan agreement with Lotus."); ¶ 45 ("In or about February 2022, **Zhuang** transferred the funds, approximately $100,000, from the bank accounts [established for the benefit of New Ming] to a different account . . . .") (all emphases added). In other words, plaintiff does not allege that Lotus Foods engaged in bad acts and that Zhuang should be held liable as its officer—plaintiff

---

[5] G.L. c. 156C, § 22 provides: "Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member or manager of a limited liability company shall be personally liable, directly or indirectly, including, without limitation, by way of indemnification, contribution, assessment or otherwise, for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company."

makes its tortious allegations against Zhuang alone.[6] *JFF Cecilia LLC v. Weiner Ventures, LLC, et al.*, No. 1984-cv-03317-BLS2, 2020 WL 4464584, at *8-9 (Mass. Super Ct. July 30, 2020) ("Plaintiffs are not seeking to pierce the corporate veil that protects the LLC members and managers, or trying in some other way to shift liability from [the corporate defendant] to individuals. Instead, Plaintiffs claim that [the individual defendants] personally committed unlawful acts for which they may be held liable."). Plaintiff thus does not need to pierce the corporate veil to get to Zhuang.[7]

The timing, too, works in New Ming's favor: the actions underlying New Ming's fraud claim—namely, Zhuang's allegedly fraudulent statements that induced New Ming to enter into the Agreements—predate Lotus Foods' formation in July 2021 (#1 ¶¶ 11-12, 15-17); the actions original to plaintiff's intentional interference and conversion claims—respectively, Zhuang's alleged false statements to Rockland Bank and other third-parties, and his alleged conversion of

---

[6] Defendant interprets the complaint as establishing that "Mr. Zhuang 'acted in a business context,'" and therefore all his actions must be attributed to Lotus Foods. (#15 at 5 (quoting #1 ¶ 8)). The court disagrees. Paragraph 8 reads in full, "Zhuang acted in a business context, recruiting investors, raising funds, and operating a variety of businesses." (#1 ¶ 8). In context, New Ming alleges only that Zhuang was a businessman, and businessmen are not categorically immune from suit under Massachusetts law.

[7] Even if plaintiff did style its complaint that way, Zhuang overstates the breadth of G.L. c. 156C, § 22's protection. Although Massachusetts law will not hold an officer personally liable for an LLC's tort "solely by reason of being a member or acting as a manager of the limited liability company," it will recognize an officer's individual liability "for tortious activity in which they personally participate, even if they were acting on behalf of the corporation." *Chandra v. DeCaprio, et al.*, No. 1884-cv-00336-BLS2, 2022 WL 6299574, at *8 (Mass. Super. Ct. Apr. 19, 2022). ("That one is not personally liable in contract or tort 'solely by reason of being a member or acting as a manager of the limited liability company' does not mean . . . that personal liability may never attach for activities undertaken on the LLC's behalf." (internal quotes and citations omitted)). The complaint clearly alleges, at the very least, that Zhuang "personally participate[d]" in the alleged bad acts, which is enough to keep the case against him alive on a motion to dismiss. *Id.*

9

New Ming's $109,000—post-date Zhuang's operation and management of the Supermarket, for which Lotus Foods was allegedly incorporated. *Id.* ¶¶ 10, 29-30, 42-43, 45-46. Taking all reasonable inferences in New Ming's favor, *Rodriguez-Reyes*, 711 F.3d at 52-53, Zhuang was acting in his own right during this time because, as alleged, Lotus Foods was not acting at all. *See Trust Safe Pay, LLC v. Dynamic Diet, LLC*, No. 17-10166-MPK, 2017 WL 3974949, at *3, n. 8 (D. Mass. Sept. 8, 2017) (noting court could discern when allegations were levied against individual defendants because "the [bad conduct] occurred before [the corporate defendant] existed"). While discovery may show this was not the case, the court at this juncture must allow New Ming's claims to proceed at least into discovery.

**B.     Failure to Join a Necessary Party – Rule 12(b)(7)**

   c. *Standard of Review*

Under Rule 12(b)(7), "a defendant may move to dismiss a claim when a plaintiff fails to join a required party" under Rule 19. *J & J Sports Productions Inc. v. Cela*, 139 F. Supp. 3d 495, 499 (D. Mass. 2015) (internal quotes and citations omitted). Although the court must accept the factual allegations in the complaint as true, it is "'not limited to the pleadings and may consider other relevant extra-pleading evidence.'" *Phoenix Ins. Co. v. Delangis*, No. 12-10689-GAO, 2015 WL 1137819, at *2 (D. Mass. Mar. 13, 2015) (quoting *Axis Ins. Co. v. Hall*, 287 F.R.D. 110, 113 (D. Me. 2012). Ultimately, the moving party shoulders the burden to show why the absent party should be joined. *J & J Sports*, 139 F. Supp. 3d at 499 (citing *Raytheon Co. v. Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 32 (D. Mass. 2000)).

"Rule 19 is geared toward circumstances 'where a lawsuit is proceeding without a party whose interests are central to the suit.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 17 (1st Cir. 2021) (quoting *Bacardí Int'l Ltd. v. V. Suárez & Co., Inc.*, 719

F.3d 1, 9 (1st Cir. 2013), *cert. denied* 571 U.S. 1024 (2013)).  The rule "provides for joinder of required parties when feasible, Fed. R. Civ. P. 19(a), and for dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed. R. Civ. P. 19(b)."  *Bacardí*, 719 F.3d at 9.  The decision is a "pragmatic, practical" one that is "heavily influenced by the facts of each case."  *Id.* (citations omitted).

The first step in a Rule 19(a) analysis is to determine whether the absent party is a "required party" by the following standards:

> (1) A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  If the party is required and joinder is not feasible, the court must then determine whether the party is indispensable under Fed. R. Civ. P. 19(b).  *Bacardí*, 719 F.3d at 9.

  d. Discussion

Zhuang's Rule 19(a) argument revolves around his concern that New Ming will use evidence and factual findings procured in this lawsuit to later sue (or, as it happens, concurrently sue[8]) Lotus Foods for the same claims.  (#15 at 7-8).  He claims that Lotus Foods will not be able

---

[8] At the hearing, defense counsel argued that New Ming's claims against Lotus Foods in the Pennsylvania Action are nearly identical to the claims against Zhuang here.  (#38; #24-1).

11

to adequately protect its interests in this lawsuit, which will prejudice it in the other. *Id.*; *see* Fed. R. Civ. P. 19(a)(1)(B)(ii).

But Lotus Foods' interests in this case are "aligned closely enough" to Zhuang's that the company's interests elsewhere will be adequately protected by Zhuang's positions here. *Merrill Lynch*, 11 F.4th at 17 ("We have explained that where the interests of an absent party are aligned closely enough with the interests of an existing party, and where the existing party pursues those interests in the course of the litigation, the absent party is not required under Rule 19."); *see Pujol v. Shearson Am. Express, Inc.*, 877 F.2d 132, 135-36 (1st Cir. 1989) ("The mere fact . . . that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party."). Although Zhuang bears the burden to show that Lotus Foods should be joined, he fails to demonstrate why his own defense—ostensibly, that he did not commit fraud, intentionally interfere with New Ming's business relations, or convert New Ming's funds—will not protect Lotus Foods' interests as well. *Roy v. FedEx Ground Package System, Inc.*, No. 3:17-30116-KAR, 2020 WL 3799203, at *6-7 (D. Mass. July 7, 2020) ("'[A]n absent party's interests cannot be harmed or impaired if they are identical to those of a present party.'" (quoting *Bacardí*, 719 F.3d at 11) (internal alternations omitted)). Presumably, the two would want to prove the same things. None of the cases defendant cites demonstrate that a corporate entity must be joined if one of its officers or directors is sued individually for tortious conduct. *Cf. Rivera Rojas v. Loewen Group Intern., Inc.*, 178 F.R.D. 356, 361-62 (D.P.R. 1998) (finding subsidiary necessary party in contract dispute against parent company); *Urquhart v. Wertheimer*, 646 F. Supp. 2d 210, 213 (D. Mass. 2009) (finding partnership necessary and indispensable party where (i) plaintiff's claims were derivative, and (ii) the general partner's and the partnership's interests were not aligned). Taking New Ming's allegations as true,

12

Lotus Foods is not necessary under Rule 19(a), and the court need not address Rule 19(b) at this time.

**C. Transfer – 28. U.S.C. § 1404(a)**

"Although a forum selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)."[9] *Alt. Marine Const. Co, Inc. v. U.S. Dist. Ct. for the Western Dist. of Texas*, 571 U.S. 49, 59 (2013).  A forum selection clause should be "given controlling weight in all but the most exceptional cases," *id.* at 59-60, so the issue here is whether the forum selection clauses apply at all where defendant is a non-party to the Agreements.

Although "a non-party to a forum selection clause may be bound if it is closely related to the dispute such that it becomes foreseeable that it will be bound," *Europa Eye Wear Corp. v. Kaizen Advisors, LLC*, 390 F. Supp. 3d 228, 231 (D. Mass. 2019) (internal quotes and citations omitted), plaintiff's tort claims, as pled, are not dependent upon the Agreements.  *Cf. id.* at 231-32 ("[C]ourts have also held that tort claims against a non-signatory are within the scope of a forum-selection clause if the tort claims ultimately depend on the existence of a contractual relationship between the signatory parties, or if resolution of the claims relates to interpretation of the contract." (internal quotes and citations omitted)).  For all the reasons discussed *supra*, Sections A-B, plaintiff cabined its allegations to Zhuang's individual conduct, separate from Lotus Foods' actions and separate from Lotus Foods' contractual relationship with New Ming.  Therefore, the forum selection clauses do not apply to Zhuang here and the case need not be transferred.

---

[9] § 1404(a) allows a district court to transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice[.]"

IV. <u>Conclusion</u>.

For the reasons stated, defendant's motion to dismiss (#13) is DENIED.

November 23, 2022                                       <u>/s/ M. Page Kelley</u>
                                                        M. PAGE KELLEY
                                                        United States Magistrate Judge